STATE of Wisconsin, Plaintiff-Respondent,

v.

Kevin P. SULLIVAN, Defendant-Appellant-Petitioner.

Supreme Court

*No. 96–2244–CR. Oral argument January 8, 1998.—Decided March 25, 1998.*

(Also reported in 576 N.W.2d 30.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Steven D. Phillips*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *William C. Wolford*, assistant attorney general with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This is a review of an unpublished decision of the court of appeals, *State v. Sullivan*, No. 96–2244-CR, unpublished slip op. (Wis. Ct. App. Mar.

26, 1997), affirming judgments of conviction of the Circuit Court for Kenosha County, S. Michael Wilk, Judge.

¶ 2. This case involves the admissibility of "other acts" evidence under Wis. Stat. § (Rule) 904.04(2) (1995–96).[1] Kevin P. Sullivan, the defendant, was convicted of battery to a woman with whom he was romantically involved (hereafter, the complainant) and of disorderly conduct.[2] The other acts evidence admitted was the testimony of the defendant's ex-wife and a neighbor that two years earlier the defendant had abused his ex-wife, not physically, but by using insulting and intimidating words including threats to assault her.

¶ 3. Two issues are raised in this review. First, did the circuit court erroneously exercise its discretion in admitting the other acts evidence? *See* Wis. Stat. §§ (Rules) 904.04(2) and 904.03. Second, if the circuit court erred in admitting the other acts evidence, was the error harmless?

¶ 4. The first issue, the admissibility of other acts evidence, is addressed by using the three-step analysis set forth below. This analytical framework (or one substantially similar) has been spelled out in prior cases,[3]

---

[1] All further references are to the 1995–96 Wisconsin Statutes unless otherwise indicated.

[2] The jury acquitted the defendant of false imprisonment and intimidation of a witness.

[3] Some cases set forth these three steps as a two-step analysis, with the first step having two parts. The two-step analysis is set forth as follows: First, the circuit court must consider whether the proposed evidence is being offered for a valid purpose as identified in Wis. Stat. § (Rule) 904.04(2). Implicit in this first step is the determination that the evidence is relevant

in Wis JI—Criminal No. 275 Comment at 2 (Rel. No. 28—12/91) and in Wis JI—Criminal No. 275.1 Comment: Other Acts Evidence (Rel. No. 24–1/90).

¶ 5. The three-step analytical framework is as follows:

¶ 6. (1) Is the other acts evidence offered for an acceptable purpose under Wis. Stat. § (Rule) 904.04(2), such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident?

¶ 7. (2) Is the other acts evidence relevant, considering the two facets of relevance set forth in Wis. Stat. § (Rule) 904.01?[4] The first consideration in assessing relevance is whether the other acts evidence relates to a fact or proposition that is of consequence to the determination of the action. The second consideration in assessing relevance is whether the evidence has probative value, that is, whether the other acts evidence has a tendency to make the consequential fact or proposition more probable or less probable than it would be without the evidence.

¶ 8. (3) Is the probative value of the other acts evidence substantially outweighed by the danger of

---

to an issue in the case. Second, the court must determine whether the probative value of that evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence. *See, e.g., State v. Friedrich,* 135 Wis. 2d 1, 19, 398 N.W.2d 763 (1987); *State v. Alsteen,* 108 Wis. 2d 723, 729, 324 N.W.2d 426 (1982). *See also* 7 Daniel D. Blinka, *Wisconsin Practice: Evidence* § 404.5, at 113 (1991).

[4] *See* 7 Daniel D. Blinka, *Wisconsin Practice: Evidence* § 401.1, at 63 (1991); 1 *McCormick on Evidence,* § 190, at 773–74 (John W. Strong, ed., West Publishing Co. 4th ed. 1992).

unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence? *See* Wis. Stat. § (Rule) 904.03.

¶ 9. If the other acts evidence was erroneously admitted in this case, the second issue presented is whether the error is harmless or prejudicial.

¶ 10. The circuit court admitted the other acts evidence. The court of appeals affirmed the judgments of conviction of the circuit court. For the reasons set forth, we reverse the decision of the court of appeals. We conclude as follows:

¶ 11. (1) The other acts evidence in this case was proffered to establish the defendant's intent or absence of accident under Wis. Stat. § (Rule) 904.04(2).

¶ 12. (2) With regard to relevance, the other acts evidence relates to a consequential fact in this case, namely the defendant's intent or absence of accident. The other acts evidence is dissimilar enough from the incident upon which the charged offenses were based that the evidence is not probative of the defendant's intent or absence of accident.

¶ 13. (3) Even if the other acts evidence had probative value with regard to the defendant's intent or absence of accident, the probative value of the other acts evidence is substantially outweighed by the prejudicial effect to the defendant.

¶ 14. (4) The admission of the other acts evidence in this case is reversible error.

I

¶ 15. We first comment on the circuit court's and the court of appeals' mode of addressing other acts evidence. In this case, the circuit court admitted the other acts evidence. Although the prosecutor, the pro-

ponent of the evidence, and the circuit court referred to the three-step framework described above, they failed to relate the specific facts of this case to the analytical framework. The prosecutor and the circuit court did not carefully probe the permissible purposes for the admission of the other acts evidence; they did not carefully articulate whether the other acts evidence relates to a consequential fact or proposition in the criminal prosecution; they did not carefully explore the probative value of the other acts evidence; and they did not carefully articulate the balance of probative value and unfair prejudice.

¶ 16. The proponent and the opponent of the other acts evidence must clearly articulate their reasoning for seeking admission or exclusion of the evidence and must apply the facts of the case to the analytical framework. The circuit court must similarly articulate its reasoning for admitting or excluding the evidence, applying the facts of the case to the analytical framework. This careful analysis is missing in the record in this case and has been missing in other cases reaching this court. Without careful statements by the proponent and the opponent of the evidence and by the circuit court regarding the rationale for admitting or excluding other acts evidence, the likelihood of error at trial is substantially increased and appellate review becomes more difficult. The proponent of the evidence, in this case the State, bears the burden of persuading the circuit court that the three-step inquiry is satisfied.

¶ 17. The court of appeals affirmed the judgments of the circuit court, concluding that the other acts evidence was relevant to the issues of intent and absence of accident and was admissible to show the defendant's propensity to commit the charged offenses. *See Sullivan*, unpublished slip op. at 9–10. In reaching

this conclusion, the court of appeals expressed concern that the supreme court and the court of appeals over the years have chipped away at *Whitty v. State*, 34 Wis. 2d 278, 149 N.W.2d 557 (1967), this court's seminal decision regarding other acts evidence. Referring to *State v. Friedrich*, 135 Wis. 2d 1, 398 N.W.2d 763 (1987), and *State v. Plymesser*, 172 Wis. 2d 583, 493 N.W.2d 376 (1992), the court of appeals concluded that "the supreme court has signaled that a defendant's motive to commit the charged offense can be established by prior acts which demonstrate the defendant's propensity to commit such acts. That seems contrary to *Whitty* and § 904.04(2)." *Sullivan*, unpublished slip. op at 7–8.[5]

¶ 18. In light of the decision and comments of the court of appeals, we take this opportunity to reaffirm the vitality of Wis. Stat. § (Rule) 904.04(2) and *Whitty*, as both the State and the defendant have urged us to do.

## II

¶ 19. The defendant was convicted after a jury trial of battery to the complainant contrary to Wis.

---

[5] The Criminal Jury Instructions Committee has analyzed the cases involving other acts evidence, commenting that "although many of the decisions. . .have approved the admission of other acts evidence and have tended to expand the range of admissible evidence, there are also many cases that have found admission to be error." Wis. JI—Criminal No. 275.1 Comment at 4 (Rel. No. 24–1/90) (citations omitted). The Criminal Jury Instructions Committee also commented that the cases demonstrate that a " 'greater latitude of proof' applies to the admission of other-crimes evidence in sex crimes cases, especially those dealing with children as victims." Wis. JI—Criminal No. 275.1 Comment at 3 (Rel. No. 24–1/90).

Stat. § 940.19 and disorderly conduct contrary to § 947.01. The conviction stems from an incident which occurred in the early morning hours of October 3, 1994, between the defendant and the complainant, his then girlfriend.

¶ 20. The complainant and the deputy sheriff who responded to the complainant's call for help gave different accounts of what happened that day.

¶ 21. According to the deputy, on October 3, 1994, at approximately 5:20 a.m., he responded to a call made from the American Legion Hall in Silver Lake. Inside the Legion Hall, he found the complainant upset and crying. The deputy observed that the complainant's lips were swollen and bloody and that there were blood spots on her left cheek. The inside of her mouth was also cut. The deputy photographed the complainant's injuries.[6]

¶ 22. The deputy testified that the complainant said she and the defendant had been fighting and that she feared the defendant. According to the deputy, the complainant said she and the defendant had been out earlier that night, the defendant had started drinking, and she had left him to go home. The complainant also told the deputy that the defendant becomes hostile and violent when intoxicated.

¶ 23. According to the deputy, the complainant said she went to bed and awoke to find the defendant standing over her. She attempted to leave the bedroom, but the defendant pushed her back onto the bed. When she tried again to leave, he punched her in the mouth. She pleaded with him to let her leave the house, but he punched her in the cheek.

---

[6] The deputy's testimony at the preliminary hearing and trial was substantially the same.

¶ 24. According to the deputy, the complainant said that at one point she told the defendant she was going to call the sheriff's department, whereupon the defendant pulled the telephone cord out of the wall. The complainant stated that the defendant kept her in the bedroom for about 30 minutes, after which time he fell asleep; she then ran from the house, got into the defendant's car and drove to the American Legion Hall. The bartender there called for help. According to the deputy, the complainant said she had been in such a panic to get away from the defendant that she drove through the yard and over a small fence.

¶ 25. The deputy further testified that the complainant said she did not want the defendant to be arrested or charged. She refused to give the deputy a written statement and refused medical treatment. The complainant said she wanted only to be safe from the defendant and to have him out of her house. She gave the deputy permission to go to her house to find the defendant.

¶ 26. The deputy testified that when he arrived at the complainant's residence, he found the defendant intoxicated and arrested him. The deputy observed that a telephone cord in the living room was unplugged. He also observed that gravel from the driveway was scattered on the street. Later, upon inspecting the car, he found a dent in the rear bumper and a piece of fence hanging from the undercarriage.

¶ 27. At trial a secretary who worked at the Kenosha County District Attorney's Office testified that she received a telephone call on October 3, 1994, from a woman who identified herself as the complainant. The caller indicated that she was upset about the charges against the defendant and said that if necessary, she would change her story to stop the charges.

¶ 28. The complainant testified at the preliminary hearing on October 2, 1994, that she and the defendant had gone to the Auctioneer's Inn in Burlington.[7] When the defendant started drinking, the complainant became upset, stormed out of the tavern and drove home.

¶ 29. According to the complainant's testimony, when she arrived home she took a tranquilizer and fell asleep. She awoke to find the defendant in her bedroom, saying he wanted to talk. When she got out of bed and began pacing between the bedroom and the living room, the defendant followed her, insisting that they talk. She yelled at him, telling him she did not want to talk.

¶ 30. The complainant testified that while in the bedroom, she turned around to push the defendant away from her, whereupon she fell backwards, hitting the back of her head on either a dresser or the bed footboard. The complainant testified that there was no physical contact between the defendant and her that morning.

¶ 31. Finally, the complainant testified that she walked out of the house and got into the defendant's car. As she was leaving, she drove over a piece of fencing, through the yard, and through a ditch. She went to the Legion Hall, where someone called 911.

¶ 32. The complainant did not cooperate with the prosecution. She was not responsive to the district attorney's attempts to interview her, and at trial she testified that she still had feelings for the defendant.

¶ 33. In a pretrial motion the State sought the circuit court's permission to admit evidence of ten separate episodes involving the defendant and his ex-wife

[7] The complainant's testimony at the preliminary hearing and trial was substantially the same.

that had occurred between 14 and 26 months before the incident involving the complainant.[8] The State sought admission of the other acts evidence for the purposes of showing "an intent on the part of the defendant to threaten, intimidate, control, and harass women with whom he is involved in relationships." The State also argued that the other acts evidence would demonstrate "what kind of an individual the defendant [was], in terms of how he related to women." Over the objection of defense counsel, the circuit court admitted evidence of one of these other acts.

¶ 34. The other acts evidence admitted by the circuit court was the testimony of the defendant's ex-wife and a neighbor about a domestic disturbance on July 24, 1992. At trial the ex-wife testified that the defendant, while intoxicated, refused to leave her home and insisted on talking with her. After she repeatedly asked him to leave, he called her a "bitch" and threatened to assault her. She testified that she went to a neighbor's house and called the police. The neighbor's testimony confirmed the wife's account of the incident.

¶ 35. In admitting the other acts evidence, the circuit court reasoned as follows:

> Section (Rule) 904.04(2) does permit the State to establish the defendant's intent, in the absence of accident in this case, and to establish the defendant's knowledge and motive and establish credibility of the witnesses testifying at trial. [The] court believes that, in as much as there has been

---

[8] The other acts evidence not admitted included violation of non-contact orders, making threatening telephone calls to his ex-wife, throwing paint cans and stones, pulling a telephone off a tavern wall, and threatening his ex-wife's attorney.

essentially a recantation by the complaining witness, that the credibility of the complaining witness in recanting and also the credibility of the arresting officer, in terms of taking. . .the statement. . .are at issue.

¶ 36. The circuit court gave a cautionary instruction to the jury that the other acts evidence is to be considered only on the issues of motive, intent, knowledge, absence of mistake or accident, or credibility. The circuit court further instructed the jury that the other acts evidence is not to be used to conclude that the defendant is a bad person and for that reason guilty of the offense charged. The cautionary instruction tracks for the most part the list of permissible purposes set forth in Wis. Stat. § (Rule) 904.04(2), with the exception of the issue of credibility, which is not enumerated as a purpose in § (Rule) 904.04(2). The circuit court did not tailor the cautionary instruction to the facts of the case.

¶ 37. The defendant argues that the admission of the testimony of his ex-wife and the neighbor as to the other act was not probative of his intent or absence of accident, unfairly prejudiced him at trial and constituted reversible error.

### III

¶ 38. The applicable standard for reviewing a circuit court's admission of other acts evidence is whether the court exercised appropriate discretion. *See State v. Pharr*, 115 Wis. 2d 334, 342, 349 N.W.2d 498 (1983). An appellate court will sustain an evidentiary ruling if it finds that the circuit court examined the relevant facts; applied a proper standard of law; and using a demonstrative rational process, reached a conclusion that a

reasonable judge could reach. *See Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982) (citing *McCleary v. State*, 49 Wis. 2d 263, 182 N.W.2d 512 (1971)).

¶ 39. A circuit court's failure to delineate the factors that influenced its decision constitutes an erroneous exercise of discretion. *See McCleary*, 49 Wis. 2d at 282. When a circuit court fails to set forth its reasoning, appellate courts independently review the record to determine whether it provides a basis for the circuit court's exercise of discretion. *See Pharr*, 115 Wis. 2d at 343.

## IV

¶ 40. In Wisconsin the admissibility of other acts evidence is governed by Wis. Stat. §§ (Rules) 904.04(2) and 904.03. Section (Rule) 904.04(2) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

> Wisconsin Stat. § (Rule) 904.03 provides as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

781

¶ 41. Wisconsin Stat. § (Rule) 904.04(2) precludes proof that an accused committed some other act for purposes of showing that the accused had a corresponding character trait and acted in conformity with that trait.[9] In other words, § (Rule) 904.04(2) forbids a chain of inferences running from act to character to conduct in conformity with the character.[10]

¶ 42. The reasons for the rule excluding other acts evidence were set forth by the court in *Whitty*, 34 Wis. 2d at 292, as follows:

> (1) The overstrong tendency to believe the defendant guilty of the charge merely because he is a person likely to do such acts; (2) the tendency to condemn not because he is believed guilty of the present charge but because he has escaped punishment from other offenses; (3) the injustice of attacking one who is not prepared to demonstrate the attacking evidence is fabricated; and (4) the con-

---

[9] 7 *See* Daniel D. Blinka, *Wisconsin Practice: Evidence* § 404.5, at 110.

[10] The chart below depicts the theory of admissibility banned by Wis. Stat. § (Rule) 904.04(2).

| Item of evidence → | Intermediate inference → | Ultimate inference |
|---|---|---|
| The accused's other act | The accused's subjective, personal character, disposition, or propensity | The accused's conduct in conformity with his or her character on the charged occasion |

*See* Edward J. Imwinkelried, *The Use of Evidence of an Accused's Uncharged Misconduct to Prove Mens Rea: The Doctrines that Threaten to Engulf the Character Evidence Prohibition*, 130 Mil. L. Rev. 41 (1990).

fusion of issues which might result from bringing in evidence of other crimes.

*Id.* at 292. In short, the exclusion of other acts evidence is based on the fear that an invitation to focus on an accused's character magnifies the risk that jurors will punish the accused for being a bad person regardless of his or her guilt of the crime charged.

¶ 43. Although Wis. Stat. § (Rule) 904.04(2) precludes the admission of character or propensity evidence, it permits the admission of other acts evidence if its relevance does not hinge on an accused's propensity to commit the act charged. The second sentence in § (Rule) 904.04(2) sets forth a series of evidential propositions which do not violate the propensity inference: motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. This list is not exhaustive or exclusive. *See State v. Kaster,* 148 Wis. 2d 789, 797, 436 N.W.2d 891 (Ct. App. 1989).

¶ 44. In determining whether to admit other acts evidence, counsel and courts should engage in the three-step analytical framework we outlined earlier.

¶ 45. The first step in the analysis is to determine whether the other acts evidence is offered for a permissible purpose under Wis. Stat. § (Rule) 904.04(2), such as to establish motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶ 46. At trial, the prosecutor argued that the other acts evidence was related to intent, motive and purpose. His language, however, indicated that the evidence was aimed at the defendant's character and propensity. The prosecutor said:

> What [the other acts evidence] tells us is that this is
> an individual who's not going to be told what to do.
> But anybody, whether it's a woman, God forbid it
> should be a woman, telling him what to do. . .This is
> a man who lives a life outside of the norms and rules
> of society, outside of any control. It tells us volumes
> about his motivation, about his intent, about his
> purpose.

¶ 47. The circuit court admitted the other acts evidence, stating that it was probative of motive, intent, knowledge, absence of mistake or accident, and credibility. On appeal the State concedes that the circuit court's list of exceptions applicable to the other acts evidence in this case is too broad. The State argues, however, that the conviction can be saved because the other acts evidence is admissible for the purpose of establishing intent or absence of accident, which are closely intertwined in this case. Criminal intent is the state of mind that negates accident or inadvertence. Evidence of other acts may be admitted if it tends to undermine an innocent explanation for an accused's charged criminal conduct.[11]

¶ 48. With regard to the defendant's intent or absence of accident, the State argues that to convict the defendant of battery, it had to prove the defendant intended to cause bodily harm to the complainant. Based on the complainant's testimony at the preliminary hearing, the State assumed that she would testify at trial that her injuries were the result of an accident,

[11] *See* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 404.22[1][a], at 404–70 (Joseph M. McLaughlin, ed., 2d ed. 1997).

not the result of the defendant's intent to cause bodily harm.[12]

¶ 49. Dean Wigmore offers a famous example of the use of other acts evidence to show intent or absence of accident. In Wigmore's example, a hunter is charged with having shot a companion, and the hunter claims that the shooting was accidental. Under these circumstances evidence of the hunter's having fired at the companion on other occasions becomes admissible to disprove the claim of accidental shooting.[13]

¶ 50. We agree with the State that the use of other acts evidence in this case to prove intent or absence of accident is permissible. We therefore conclude that the State has met its burden to show that the purpose is permissible under step one of the three-step analysis.

¶ 51. We now turn to the second step in the analysis: Is the other acts evidence relevant? Under Wis. Stat. § (Rule) 904.01, relevance has two facets. The first consideration in assessing relevance is whether the evidence relates to a fact or proposition that is of consequence to the determination of the action.[14] The

---

[12] In this case the defendant did not take the stand at trial. The theory developed by the defense counsel in cross-examination of the complainant and in summation was that the complainant accidentally caused her own injuries.

[13] See 2 Wigmore, *Evidence* § 302, at 241 (Chadbourn rev. 1979). *See also United States v. Hillsberg*, 812 F.2d 328, 334 (7th Cir. 1987) (in murder prosecution, evidence of the defendant's use of gun two other times on the same day was properly admitted to show that the firing of the gun was intentional rather than accidental or inadvertent).

[14] If intent is not an issue in the case, the exception for intent under Wis. Stat. § (Rule) 904.04(2) does not apply. *See State v. Danforth*, 129 Wis. 2d 187, 201, 385 N.W.2d 125 (1986) (in prosecution for cruel maltreatment of children, evidence

substantive law determines the elements of the crime charged and the ultimate facts and links in the chain of inferences that are of consequence to the case. Thus the proponent of the evidence, here the State, must articulate the fact or proposition that the evidence is offered to prove. The parties agree, as does this court, that intent or absence of accident is of consequence to the case and that the evidence was offered to prove intent or absence of accident.[15]

¶ 52. The second consideration in assessing relevance is probative value, that is, whether the evidence has a tendency to make a consequential fact more probable or less probable than it would be without the evidence.

¶ 53. The probative value of the other acts evidence in this case depends on the other incident's nearness in time, place and circumstances to the alleged crime or to the fact or proposition sought to be proved. *See Whitty*, 34 Wis. 2d at 294. Since it is the improbability of a like result being repeated by mere chance that carries probative weight, the probative value lies in the similarity between the other act and the charged offense. The stronger the similarity between the other acts and the charged offense, the greater will be the probability that the like result was

that the defendant had struck the child on two prior occasions was irrelevant since intent to injure was not an element of the offense). *See also* Judicial Council Committee Notes, § (Rule) 904.04, 59 Wis. 2d R79 (1973).

[15] Some might use the terminology of materiality instead of consequence and say that intent or absence of accident is a material issue in the case. In Wis. Stat. § (Rule) 904.01 the concept of consequential facts replaces the common law term "materiality." 7 Daniel Blinka, *Wisconsin Practice: Evidence* § 401.1, at 64 (1991).

not repeated by mere chance or coincidence.[16] In other words, "[I]f a like occurrence takes place enough times, it can no longer be attributed to mere coincidence. Innocent intent will become improbable." *State v. Evers*, 139 Wis. 2d 424, 443, 407 N.W.2d 256 (1987).

¶ 54. The required degree of similarity between the other act and the charged offense and the required number of similar other acts cannot be formulated as a general rule. The greater the similarity, complexity and distinctiveness of the events, the stronger is the case for admission of the other acts evidence.[17] How many similar events are enough depends on the com-

---

[16] As described by Dean Wigmore, who labeled the theory "the doctrine of chances," the relevance of similar acts evidence on the issue of intent rests on "that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all." 2 Wigmore, *Evidence* § 302, at 241 ( Chadbourn rev. 1979). One accidental discharge of a hunter's gun in the direction of the companion is plausible. However, if two shots from the gun narrowly miss the companion and a third shot kills the companion, "the immediate inference. . .is that [the hunter] shot at [the companion] deliberately." *Id.*

[17] For cases discussing whether other acts evidence is relevant to show intent or absence of accident, *see State v. Evers*, 139 Wis. 2d 424, 443, 407 N.W.2d 256 (1987) (other acts evidence not admissible on intent); *Barrera v. State*, 99 Wis. 2d 269, 280–81, 298 N.W.2d 820 (1980) (other acts evidence admissible on intent); *King v. State*, 75 Wis. 2d 26, 46, 248 N.W.2d 458 (1977) (other acts evidence admissible on intent and absence of mistake or accident); *State v. Bustamante*, 201 Wis. 2d 562, 575–76, 549 N.W.2d 746 (Ct. App. 1996) (other acts evidence admissible to negate statements defendant made suggesting he had accidentally caused his infant son's fatal injuries).

plexity and relative frequency of the event rather than on the total number of occurrences.[18]

¶ 55. The State argues in this court that there were numerous similarities between the other incident and the incident being prosecuted, and thus that the other acts evidence was probative of the issue of intent or absence of accident. The State sets forth the similarities of the two incidents as follows: In both incidents the defendant was intoxicated; the defendant was at the home of a woman with whom he had been romantically involved; the defendant repeatedly insisted on talking to the woman; the woman refused to talk; the defendant became verbally abusive when the woman rejected his demands to talk; the woman asked him to leave; the defendant remained in the woman's home.

¶ 56. We agree with the State that many circumstances of the two incidents are similar. Nevertheless, the other incident does not support the inference, urged by the State, that the defendant intentionally hits women with whom he has been romantically involved.

¶ 57. First, the State's comparison involves only one other incident, not a series of incidents. Second, the factual descriptions of the incidents do not involve particularly complex or unusual facts. Third, and most important, the State glosses over one significant and telling difference between the two incidents: The prior

---

[18] For instance, if the hunter in Wigmore's example fired thousands of shots over the course of decades of hunting with the same companion, only three of which passed near the companion, the possibility that all three shots were accidental remains plausible. *See* Mark Cammack, *Using the Doctrine of Chances to Prove Actus Reus in Child Abuse and Acquaintance Rape: People v. Ewoldt Reconsidered*, 29 U.C. Davis L. Rev. 355, 382 (1996).

incident involved a domestic disturbance between the defendant and his ex-wife in which they argued but there was no physical contact between them. The charged offense in this case, by contrast, involved the defendant punching the complainant.

¶ 58. That the defendant confronted and argued with his ex-wife, threatened her, swore at her and refused to leave her house does not make it more proba-ble that he intentionally hit the complainant during an argument two years later.

¶ 59. Accordingly, we conclude that the other acts evidence was not probative of the defendant's intent or absence of accident and that the circuit court erroneously exercised its discretion in admitting the other acts evidence.

¶ 60. We need not go further in the three-step analysis, but if we were persuaded that the other acts evidence is probative of a permissible purpose under Wis. Stat. § (Rule) 904.04(2), the final step of our analy-sis would be to determine whether the circuit court erroneously exercised its discretion in weighing the probative value of the other acts evidence against the danger of unfair prejudice, confusion of the issues, or misleading the jury, or considerations of undue delay, waste of time or needless presentation of cumulative evidence.

¶ 61. Were we to reach the third analytical step, we would conclude that the circuit court erroneously exercised its discretion in the balancing test under Wis. Stat. § (Rule) 904.03. The probative value, if any, of the other acts evidence is substantially outweighed by the danger of unfair prejudice to the defendant.

¶ 62. Unfair prejudice results when the proffered evidence has a tendency to influence the outcome by

improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case. *See State v. Mordica*, 168 Wis. 2d 593, 605, 484 N.W.2d 352 (Ct. App. 1992) (citing *Lease Am. Corp. v. Insurance Co. of N. Am.*, 88 Wis. 2d 395, 401, 276 N.W.2d 767 (1979)). In this case the danger of unfair prejudice was that the jurors would be so influenced by the other acts evidence that they would be likely to convict the defendant because the other acts evidence showed him to be a bad man.[19]

¶ 63. The State relies on two factors to show that there was no unfair prejudice: the defendant was acquitted of two charges, and the circuit court gave the jury cautionary instructions.

¶ 64. First, the State argues that the jury apparently bore the cautionary instruction in mind since it acquitted the defendant of two of the four counts with which he was charged. We are not persuaded that acquittal of two charges in this case demonstrates that the jury was not influenced by the other acts evidence in convicting on the other two charges. In this case the defendant's character traits inferred from the other acts evidence seem more pertinent to the convicted offense of battery than to the acquitted offenses of false imprisonment and intimidation of a witness. Acquittal of the two charges does not demonstrate that the jury

[19] "[T]he legal prejudice of which we speak here is the potential harm in a jury's concluding that because an actor committed one bad act, he necessarily committed the crime with which he is now charged." *State v. Fishnick*, 127 Wis. 2d 247, 261–62, 378 N.W.2d 272 (1985) (citing *State v. Tarrell*, 74 Wis. 2d 647, 657, 247 N.W.2d 696 (1976)).

was not influenced by the other acts evidence in convicting the defendant on the battery charge.

¶ 65. Second, the State correctly points out that the circuit court gave a cautionary instruction. As courts have stated, a cautionary instruction, even if not tailored to the case, can go " 'far to cure any adverse effect attendant with the admission of the [other acts] evidence.' " *State v. Mink*, 146 Wis. 2d 1, 17, 429 N.W.2d 99 (Ct. App. 1988) (quoting *State v. Fishnick*, 127 Wis. 2d 247, 262, 378 N.W.2d 272 (1985)).

¶ 66. We are not persuaded by this argument. Although cautionary instructions reduce the risk that a jury will find an accused guilty simply because he or she is a bad person, in this case the cautionary instruction to the jury about the other acts evidence was too broad, and its cautionary effect was significantly diminished.

¶ 67. Furthermore, the prosecutor referred to the other acts evidence extensively in both the opening and closing statements and urged the jury to consider what the evidence revealed about the defendant's character. In the opening statement, the prosecutor said the defendant was a man who would not let a woman tell him what to do. The prosecutor indicated that the evidence would show "what [the defendant] does when he drinks and becomes disruptive," namely that he "engages in threatening behavior, abusive behavior, even behavior that takes place in the presence of law enforcement officers."

¶ 68. During his closing argument, the prosecutor explained that the other incident placed the current charges "in context," revealing the defendant's "motives" for committing these crimes.

¶ 69. The prosecutor explained how the other incident showed that the defendant "knows exactly

791

what is going on, what is and is not allowed because he's been arrested before for similar type behavior in the past." The prosecutor returned to this theme during his rebuttal argument.

¶ 70. In light of the prosecutor's repeated references to the other acts evidence in the opening and closing statements, and the fact that the cautionary instruction was not limited to evidence of the defendant's intent or absence of accident, we conclude that the cautionary instruction was insufficient to cure the prejudicial impact of the other acts evidence.

¶ 71. Were we to reach the third analytical step, we would conclude that the circuit court erroneously exercised its discretion in the balancing test under Wis. Stat. § (Rule) 904.03. The probative value, if any, of the other acts evidence is substantially outweighed by the danger of unfair prejudice to the defendant.

V

¶ 72. Having concluded that it was error to admit the other acts evidence, the remaining question is whether the error was harmless in this case. The test for harmless error is whether there is a reasonable possibility that the error contributed to the conviction. *See State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985); *Fishnick*, 127 Wis. 2d at 265. The conviction must be reversed unless the court is certain the error did not influence the jury. *See Dyess*, 124 Wis. 2d at 541–42.

¶ 73. The burden of proving no prejudice is on the beneficiary of the error, here the State. The State must establish that there is no reasonable possibility that

792

the error contributed to the conviction. *See Dyess*, 124 Wis. 2d at 543.

¶ 74. After a careful reading of the record we conclude that the State has not proven that the error did not contribute to the conviction.

¶ 75. The State was unable to present a witness who could link the complainant's injuries to the defendant's intentional conduct. Although the deputy testified to the statements the complainant made to him on October 3, 1994, the complainant's testimony at trial conflicted with the deputy's account of her earlier statements. The jury had to decide at what point the complainant was telling the truth—the morning of the incident or at trial. Was she telling the truth in her out-of-court statements to the deputy implicating the defendant or in her in-court statements exonerating the defendant? In light of the complainant's inconsistent statements, any evidence that tended to support one version over the other necessarily influenced the jury.

¶ 76. By his own words the prosecutor conceded the weakness of the State's case and the critical need for the other acts evidence if the State were to carry its burden of proving guilt beyond a reasonable doubt. In the hearing on the motion to admit other acts evidence the prosecutor argued:

> In this particular case, we're going to have a victim who is not going to offer testimony that evidence is the defendant's state of mind. She's completely recanted on that, and all we have are the bare minimums of what she informed the police of on that day as well as her behavior in fleeing from the defendant. . . . That's why the prior acts evidence is demonstrably critical to a full presentation of the

facts and to flush out those specific elements of the offense.

. . .

I submit that. . .a defense attorney can easily argue that when the State's burden is beyond reasonable doubt, and we have a victim saying one thing on one occasion and saying totally opposite on another, that *there is clearly doubt, a reasonable doubt* as to what occurred, and that the State has not met its burden of proof, and that is the scenario that comes across if none of the prior acts evidence come in. (Emphasis added.)

¶ 77. Based on our review of the record and the prosecutor's own view of the case, we conclude that there is a reasonable possibility that the other acts evidence contributed to the defendant's convictions. Accordingly we conclude that the State has not met its burden of proving beyond a reasonable doubt that the error did not contribute to the verdict.

¶ 78. In sum, we conclude as follows:

¶ 79. (1) The other acts evidence in this case was proffered to establish the defendant's intent or absence of accident under Wis. Stat. § (Rule) 904.04(2).

¶ 80. (2) With regard to relevance, the other acts evidence relates to a consequential fact in this case, namely the defendant's intent or absence of accident. The other acts evidence is dissimilar enough from the incident upon which the charged offenses were based that the evidence is not probative of the defendant's intent or absence of accident.

¶ 81. (3) Even if the other acts evidence had probative value with regard to the defendant's intent or absence of accident, the probative value of the other

acts evidence is substantially outweighed by the prejudicial effect to the defendant.

¶ 82. (4) The admission of the other acts evidence in this case is reversible error.

¶ 83. Accordingly we reverse the judgments of conviction and remand the cause to the circuit court.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court.

¶ 84. N. PATRICK CROOKS, J. (*dissenting*). I dissent. Although I agree with many portions of the majority opinion, I disagree with the majority's conclusions in four respects. First, there is substantial evidence in the record that the circuit court judge delineated the factors influencing his decision to admit the other acts evidence. As such, this court's review of the admission of other acts evidence is limited to determining whether the circuit court erroneously exercised its discretion. Second, the other acts evidence is significantly similar to the charged offenses in several respects and is therefore probative of the defendant's intent or absence of accident in the present case. Third, the probative value of the other acts evidence is not substantially outweighed by any unfair prejudice to the defendant. Fourth, the jury instruction given on other acts evidence was not so overly broad that it significantly diminished any cautionary effect.

¶ 85. The majority correctly states that "[t]he applicable standard for reviewing a circuit court's admission of other acts evidence is whether the court exercised appropriate discretion." Majority op. at 780. The majority also correctly states that a circuit court's evidentiary ruling will be sustained provided the cir-

cuit court considers the relevant facts, applies the appropriate standard of law, and uses a demonstrative rational process to reach a reasonable conclusion. *See* Majority op. at 781. In the present case, the circuit court engaged in a thorough discussion of: (1) the facts surrounding the July 24, 1992, incident and the evidence in the present case; (2) the application of Wis. Stat. §§ 904.04(2) and 904.03 under the circumstances; and (3) the probative value of the other acts evidence, including the conclusion that the probative value of the evidence was not substantially outweighed by any prejudicial effect.

¶ 86. In addressing the State's request to admit evidence of the July 24, 1992, incident, the circuit court made the following detailed analysis of the facts:

> In terms of, first of all, the elements, there's an allegation that the defendant at that time was intoxicated and verbally abusive. I should note, in terms of the intoxication element in the instant case, the facts allege that the complaining witness and the defendant ended up at [an establishment]. . .and the defendant began to drink. . . .
>
> . . .
>
> [T]he Court is not going to speculate as to whether [the defendant] was either under some order not to drink or was—had a drinking situation in which he had been committed from the drinking. Whatever it was, that was an issue, and the Court will accept, for purposes of prior acts, that drinking was some kind of a problem for the defendant. [In the present case] the officer had indicated that, in the preliminary, that the [defendant] appeared in the [complainant's] bedroom, that he had been drinking.
>
> . . .

796

And [the officer in the present case] reported that [the complainant] said that [the defendant] and she had been out. . .and when he became too intoxicated, she left him; and he becomes hostile and violent when he drinks alcohol. . . .

This prior act on July 24, 1992, with reference to that, the officer from the Burlington Police Department was dispatched in the city of Burlington to a domestic disturbance in progress. And, upon arrival, he indicated that he located a female standing by a van crying and obviously upset; and that was [the neighbor] indicating that the man later identified as [the defendant] had been at the address causing trouble between [the defendant] and his ex-wife. . . . And she indicated that [the defendant] had been verbally abusive and refused to leave upon request.

And then the officer interviewed [the] ex-wife, apparently, of the defendant; and she indicated that the defendant was seated on the porch and had recently arrived at her home and refused to leave, and that the defendant was intoxicated and verbally abusive to her and to her children and [her neighbor], and that [her neighbor's] husband was also present.

And the officer approached the defendant, asked him his name. The defendant told the officers his last name was Sullivan and then said that was all he was going to tell me.

The ex-wife [ ] indicated that the defendant had approached—she had approached the defendant while in the driveway of the home when he arrived. An argument ensued. She stated that [the defendant] began yelling at her; in the process of doing this, called her [derogatory names], and that he was going to take her in the backyard and beat her up.

797

In light of the similarities in the two instances, the circuit court concluded that "it would seem appropriate on those issues, that under 904.04, that so much of the July 24, 1992 incident, as I've discussed, be admitted as a prior act."

¶ 87. The circuit court also made a determination on the record that the probative value of the evidence of the July 24, 1992, incident was not substantially outweighed by any unfairly prejudicial effect.

> [The] Court believes that while the information is obviously prejudicial to the defendant, that it is not unfairly prejudicial, in that the issue before the Court is his actions on the night in question. And in as much as there has been a recantation, the Court believes that it is appropriate for the State to be able to, under 904.04, to establish the defendant's intent in the absence of accident. . . . The Court believes that while the acts are similar, for which they must be in order to qualify under 904.04, that they do not unfairly prejudice the defendant.

¶ 88. Although the circuit court determined that the evidence was prejudicial, it concluded that it was not unfairly prejudicial. This is an accurate analysis since under Wis. Stat. § 904.03 the probative value of the other acts evidence is appropriately "weighed against the danger of misleading the jury and *unfair* prejudice, not prejudice." *State v. Grande*, 169 Wis. 2d 422, 434, 485 N.W.2d 282 (Ct. App. 1992).

¶ 89. These excerpts from the record evince the circuit court's extensive analysis in finding the other acts evidence admissible. Our review involves an analysis of whether the circuit court erroneously exercised its discretion in admitting th e evidence of the incident involving the defendant and his ex-wife. *See State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983).

"The question on appeal is not whether this court, ruling initially on the admissibility of the evidence, would have permitted it to come in, but whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record." *State v. Wollman*, 86 Wis. 2d 459, 464, 273 N.W.2d 225 (1979) (citing *McCleary v. State*, 49 Wis. 2d 263, 182 N.W.2d 512 (1971).

¶ 90.　The cases cited by the majority for the proposition that this court's review should be independent are factually distinguishable from the present case. For example, in *McCleary*, 49 Wis. 2d at 282, the circuit court judge failed to provide any reason why a nine year near-maximum sentence for a non-violent crime (forging a $50 check) was appropriate where the defendant was a first offender. In that case, the judge "very well and properly stated his reasons why probation was not appropriate, but gave *no reason* for the sentence he did impose."[1] *Id.* (emphasis supplied).

¶ 91.　Similarly, in *Pharr*, 115 Wis. 2d at 343, this court independently reviewed the record where the circuit court "had not explicitly engaged in the balancing test required by sec. 904.03, Stats., nor had the [circuit] court articulated clearly the reasons for admitting the [other acts] evidence." The circuit court's entire discussion of the evidence in *Pharr* was as follows: "I think that the evidence of [the shooting] would be admissible for reasons [the prosecution] stated. Evidence of any

---

[1] The circuit court's only discussion of the sentence imposed consisted of the following: "I intend to follow the recommendation of the Probation Department, and I will not grant probation in this case. I'm prepared to make disposition thereon. The laws of society apply to every member thereof, whether in a nichey type attitude he considers himself to be above them or not." *Mc Cleary v. State*, 49 Wis. 2d 263, 268, 182 N.W.2d 512 (1971).

armed robbery of any bank would appear to me to be highly prejudicial and would appear to me to be inadmissible." *Id.* at 339.

¶ 92. In the present case, the circuit court made an in-depth analysis of the facts surrounding the July 24, 1992, incident and determined that the evidence would be properly admitted to show the defendant's intent and absence of accident under Wis. Stat. § 904.04(2).[2] The circuit court also considered the prejudicial effect of the evidence under Wis. Stat. § 904.03, and concluded that its probative value was not substantially outweighed by any unfair prejudice.

¶ 93. The majority states that the incident on July 24, 1992, "relates to a consequential fact in this case, namely the defendant's intent or absence of accident." Majority op. at 794. However, the majority concludes that "[t]he other acts evidence is dissimilar enough from the incident upon which the charged offenses were based that the evidence is not probative of the defendant's intent or absence of accident." *Id.*

¶ 94. The majority concedes "that many circumstances of the two incidents are similar." Majority op. at 788. These similarities include the defendant's intoxication, the defendant being at the homes of women with whom he had a romantic relationship, the defendant insisting on speaking with the women, the women refusing to speak with the defendant, the defendant physically threatening the women and becoming verbally abusive, the women asking him to leave their residence and the defendant refusing, and the women contacting law enforcement officers for assistance. These numerous similarities evince that the other acts evidence of the incident on July 24, 1992,

---

[2] The circuit court also admitted the other act evidence to show motive, knowledge, and witness credibility.

is probative of the defendant's intent or absence of accident in the present case. The evidence is particularly relevant to the defendant's absence of accident regarding the battery charge since the complainant recanted her story and claimed that the bodily harm resulted from an accident. The defendant's physical threats and verbal abuse, intoxication, and refusal to leave his ex-wife's home under circumstances significantly similar to the present case make it more probable that the intoxicated defendant intended to physically threaten and batter the complainant.

¶ 95. The majority's main concern with the other acts evidence appears to be the fact that the prior incident did not involve any bodily harm to the defendant's ex-wife. Thus, the majority concludes that the prior act makes it no more probable that the defendant physically assaulted the complainant in the present case. Although the other acts evidence is probative to the battery charge in any event, the majority's conclusion fails to recognize that the defendant was facing charges on three separate counts—battery, false imprisonment, intimidation of a victim—all of which require intent as an element of the offense and only one of which requires the element of bodily harm.[3]

¶ 96. The defendant's intoxicated state, physical threats, and refusal to leave his ex-wife's residence on a prior occasion make it more probable that the intoxicated defendant threatened the complainant, refused to leave the complainant's residence and intentionally

---

[3] The counts for which the defendant was charged that include intent as an element of the crime are battery contrary to Wis. Stat. § 940.19(1); false imprisonment contrary to Wis. Stat. § 940.30; and intimidation of a victim contrary to Wis. Stat. § 940.44(1). The defendant was also charged with disorderly conduct contrary to Wis. Stat. § 947.01.

refused to let her leave. Moreover, the defendant's intoxication and repeated threats and verbal abuse of his ex-wife on July 24, 1992, make it more probable that the defendant intentionally prevented the complainant from calling law enforcement officers to report that the defendant caused her bodily harm and refused to let her leave her residence. The complainant was able to escape her residence and report the incident only after the defendant had fallen asleep.[4]

¶ 97. The majority also fails to consider that not only did the circuit court undertake a thorough analysis of the particular incident that was ultimately admitted as other acts evidence, but the circuit court carefully considered and denied several other instances of prior acts that the State sought to introduce.[5] More importantly, the circuit court undertook

---

[4] Although the complainant's claim of accident was specifically directed at the battery charge, the proffered other acts evidence is relevant to the defendant's intent as well as absence of accident. As stated, intent is an element of the battery charge, the false imprisonment charge, and the intimidation of a victim charge.

[5] The majority opinion finds it relevant that the State's other acts evidence "involves only one other incident, not a series of incidents." *See* Majority op. at 788. A single instance of other acts evidence is not per se inadmissible. *See State v. Roberson*, 157 Wis. 2d 447, 455 n.1, 459 N.W.2d 611 (Ct. App. 1990), *review denied*, 464 N.W.2d 424 (Wis., Oct 16, 1990). Several other incidents were proffered as evidence; however, the circuit court denied the State's request to admit other acts evidence of incidents that occurred on July 26, 1992 (defendant's telephone calls to neighbor verbally abusing and threatening the neighbor and defendant's ex-wife); September 7, 1992 (defendant's telephone calls to ex-wife threatening her and her male friend); September 8, 1992 (defendant was intoxicated and creating a disturbance at a local tavern, and defendant threw items and

such a detailed analysis of the July 24, 1992, incident that it went so far as to prohibit the State from presenting to the jury certain portions of the incident that were not similar to the present case.[6]

¶ 98. In addition to the thorough analysis of the other acts evidence, the circuit court gave a cautionary instruction to the jury that the evidence of the July 24, 1992, incident was probative only of the defendant's motive, intent, knowledge, absence of mistake or accident, and credibility. *See* WI JI—Criminal 275. Although the use of the evidence in the present case is only permissible to prove defendant's intent or absence of accident, the circuit court's instruction was not so "broad that its cautionary effect was significantly diminished." Majority op. at 791.

¶ 99. In *State v. Fishnick*, 127 Wis. 2d 247, 378 N.W.2d 272 (1985), the circuit court admitted other acts evidence under Wis. Stat. § 904.04(2) for the purpose of showing the defendant's motive, intent, preparation or plan. Accordingly, the cautionary

---

pulled the phone out of the wall); September 10, 1992 (defendant threatening ex-wife's divorce attorney at the attorney's office); September 11, 1992 (defendant abusive and intoxicated at ex-wife's divorce attorney's office, resulting in defendant's arrest); February 4, 1993 (defendant's verbally abusive and threatening telephone calls to ex-wife); June 2, 1993 (defendant contacting ex-wife in spite of bond conditions ordering no contact); August 11, 1993 (defendant's contact with ex-wife in violation of court orders).

[6] There was evidence in the police report from the July 24, 1992, incident that the neighbor believed the defendant had a weapon in his van at that time, that the defendant recklessly handled weapons, and that the defendant bought and resold a number of guns. The circuit court denied admission of any testimony referencing a weapon, stating "[t]he Court does not believe that that testimony is similar or relevant."

■■■■■■■■■

■■■■■■■■■

instruction given to the jury in *Fishnick* stated that the other acts evidence was admitted to show motive, intent, preparation or plan. *See id.* at 260. On appeal, this court determined that the circuit court did not erroneously exercise its discretion in admitting the evidence because the evidence was relevant for purposes of motive and identity. *See id.* However, this court determined that the evidence was inadmissible to show plan, preparation, or intent to do the act. Although the jury instruction in *Fishnick* was broad, this court upheld the admission of the evidence concluding that "[t]he jury was properly instructed that the evidence was introduced on the issue of motive." *Id.* at 261.

¶ 100. Furthermore, in *State v. Roberson,* 157 Wis. 2d 447, 459 N.W.2d 611 (Ct. App. 1990), *review denied,* 464 N.W.2d 424 (Wis., Oct. 16, 1990), the court of appeals upheld the circuit court's admission of other acts evidence. In admitting the evidence, the circuit court instructed the jury that the other act was admissible because it was relevant to the issue of the defendant's alleged plan. *See id.* at 452. The court of appeals concluded that the evidence was not admissible to show the defendant's plan, but that it was admissible to show the defendant's intent. *See id.* at 454. The court of appeals affirmed the circuit court, stating that "[a]lthough the trial court articulated the wrong reason for admission of the [other acts] evidence, we will affirm if the ruling is proper on other grounds." *Id.* at 453–54.

¶ 101. I agree with the majority that the vitality of Wis. Stat. § 904.04(2) and *Whitty* should be reaffirmed. *See* Majority op. at 775. *Whitty* states that other acts evidence should be used sparingly and only when reasonably necessary. *See Whitty,* 34 Wis. 2d at 297. However, a determination of admissibility must

804

be made on a case-by-case basis, using a detailed analysis of the facts. There is neither a presumption of exclusion nor a presumption of admission regarding other acts evidence. *See State v. Speer*, 176 Wis. 2d 1101, 1114, 501 N.W.2d 429 (1993). If the evidence is relevant for an admissible purpose under Wis. Stat. § 904.04(2), it will be admitted unless its probative value is substantially outweighed by unfair prejudice. *See id.* at 1115.

¶ 102. In the present case, the circuit court articulated its reasons why the July 24, 1992, incident was probative to show the defendant's intent or absence of accident and applied the proper Wis. Stat. § 904.03 analysis. The circuit court considered the relevant facts, applied the appropriate standard of law, and demonstrated a rational process in reaching the conclusion to admit the other acts evidence. The other acts evidence had definite probative value on the issues of intent and absence of accident. That probative value was not substantially outweighed by the dangers set forth in Wis. Stat. § 904.03, such as unfair prejudice. There was no erroneous exercise of discretion by the circuit court judge in allowing the other acts evidence to be presented to the jury. Furthermore, consistent with our prior decisions, the cautionary instruction given was appropriate, since the jury was instructed that the evidence was admitted for the purposes of showing the defendant's intent and absence of accident.

¶ 103. For these reasons, I respectfully dissent.

¶ 104. I am authorized to state that Justice DONALD W. STEINMETZ and Justice JON P. WILCOX join this dissent.